UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
JOHN M. MORAN AND                      )
NORA F. MORAN                          )    Civ. Nos. 05-11091-RCL
                                       )
v.                                     )
                                       )
UNITED STATES OF AMERICA               )
_____)

**REPLY OF JOHN MORAN AND NORA MORAN TO GOVERNMENT'S RESPONSE TO THEIR MOTIONS PURSUANT TO 28 U.S.C. §2255**

This reply will first address several erroneous or misleading aspects of the government's "Facts" section. It will the address the government's pervasive reliance upon an improper standard for evaluating whether, had counsel moved for new trials in addition to judgments of acquittal for the Morans, such motions would probably have been granted, *i.e.*, whether the Morans have satisfied the prejudice portion of the *Strickland* standard. Finally, this reply will demonstrate the fallacy of the government's arguments that counsel did not seek the alternative relief of new trials for strategic reasons.

**I.   FACTS.**

The government's statement that Nora Moran "did not abstain from participating in the board's review and approval of the loans," Gvt. Response at 5, and much of the rest of its factual recitation as well, is a disingenuous attempt to resurrect a theory of Nora Moran's guilt which the First Circuit, as well as this Court, rejected on the ground of evidentiary insufficiency, *i.e.*, that Nora Moran voted to approve the Puente/Boersner loans at the January 17, 1987, meeting of the First American Board of Directors, *see United States v. Moran*, 312 F.3d 480, 492 (1st Cir. 2002); Memorandum and Order, July 13, 2000, at 52-53, 56-57, and which Judge Boudin, in his separate concurring opinion, branded as "hopeless." *Id.* at 496. As the First Circuit stated:

> [I]t is not clear that at the January 15, 1987 meeting of First American's Board of Directors, Nora Moran participated in a dispositive vote on the loans. Though the government advanced a theory that a vote was taken to ratify the Puente/Boersner loans, it appears that the Board rubber-stamped as a mere formality a summary report of the loans the Executive Committee had approved in December.

312 F.3d at 492.

The government stresses that the First Circuit in *Moran I* found the evidence sufficient to support the convictions of both John and Nora Moran. And so it did. However, for purposes of advancing its erroneous argument that the First Circuit's *Moran I* decision precludes a conclusion that new trials could properly be granted under Rule 33 on weight of the evidence grounds, the government obfuscates the distinction between the standard applicable to Rule 29 judgment of acquittal motions and that applicable to Rule 33 new trial motions. *See* Gvt. Response at 8-10. The First Circuit, in reversing this Court's grants of judgments of acquittal for John and Nora Moran on all counts, applied the following standard:

> At both the trial and appellate level, a court must determine whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved all essential elements of the crime. . . . Under this formulation, a court considers all evidence, direct and circumstantial, and resolves all evidentiary conflicts in favor of the verdict. . . . Thus, we do not weigh the credibility of witnesses or assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence. . . . Accordingly, as long as the guilty verdict finds support in a plausible rendition of the record, it must stand.

312 F.3d at 487 (citations and internal quotation marks omitted). Thus, it was against this considerably more stringent *Rule 29* standard which the First Circuit assessed the sufficiency of the evidence in *Moran I.* For example, the complete sentence from which the government has quoted only a portion regarding the sufficiency of the evidence as to John Moran, Gvt. Response at 8, reads: "*Considering the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict*, we conclude that a jury could well have found beyond a reasonable

doubt that John Moran knowingly executed a scheme to defraud First American." 312 F.3d at 489 (emphasis added). As addressed in the Morans' opening memorandum ("Moran Memo") at 20-21, this is not the standard which is applicable to the granting of new trials under Fed. R. Crim. P 33, a fact which the government ignores throughout its Response.

The government also states that the First Circuit held that "Nora Moran was aware of John Moran's brokerage and profit arrangement by the time the loans were approved, although she never volunteered that information to anyone at [First American]." Gvt. Response at 9. It did not. In the "Background" section of the opinion, the Court stated:

> *According to the memorandum regarding the meeting that Ragalevsky and Adams submitted to First American after the Morans approved it*, Nora Moran admitted that she had been aware of her husband's brokerage and profit arrangement by the time the loans were approved. She also admitted that she never volunteered this information to anyone at the bank, believing that her husband had made the appropriate disclosures.

312 F.3d at 484 (emphasis added). In concluding that the evidence as to Nora Moran sufficed to withstand a Rule 29 challenge, the Court stated that "*a rational trier of fact could have found* that Nora Moran, who admitted to Ragalevsky and Adams that she was aware of her husband's outside dealings and arrangements concerning the projects prior to the consummation of the transactions at issue . . . ." *Id.* at 492 (emphasis added). The First Circuit also did not hold that Nora Moran was "guilty" of bank fraud and conspiracy to commit bank fraud, Gvt. Response at 9; it held no more than that the evidence sufficed, under the above-quoted *Rule 29* standard, to support the jury's verdicts.

II. **THE GOVERNMENT RELIES THROUGHOUT ITS RESPONSE ON AN IMPROPER STANDARD FOR EVALUATING *STRICKLAND* PREJUDICE IN THE CONTEXT OF THIS CASE.**

The government's critique of the Morans' "unrealistic view of their case," Gvt. Response at 11-14, suffers from a fundamental flaw which pervades its entire presentation: its refusal to

3

recognize that Rule 33 motions are subject to a less exacting standard than that applicable to Rule 29 motions, one which does *not*, contrary to the government's unsupported assertion, require the Court to view the evidence in the light most favorable to the government. *See* Gvt. Response at 12. Unlike the judgment-of-acquittal context, "[i]n considering [a new trial motion], the court has broad power to weigh the evidence and assess the credibility of . . . the witnesses who testified at trial." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986), *quoting United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980). *See, e.g., United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004); *United States v. Wilkerson*, 251 F.3d 273, 278 (1st Cir. 2001); *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000); *United States v. Ruiz*, 105 F.3d 1492, 1501 (1st Cir. 1997). The fact that evidence is sufficient to survive a Rule 29 challenge does not, contrary to the government's view of the matter, preclude relief under Rule 33. Indeed, were the government's position correct, then a new trial could, as a matter of law, *never* be granted on the ground that the evidence preponderated so heavily against the verdict that a new trial should be granted in the interests of justice when there was sufficient evidence to preclude the entry of a judgment of acquittal. This is not the law. Indeed, there are a number of reported decisions in which the evidence was held sufficient under the standard applicable to Rule 29 motions, yet new trials were granted under Rule 33 – and upheld on appeal – on weight of the evidence grounds. *See* Moran Memo at 25-27.

  Thus, the fact that three – not five[1] – judges of the First Circuit concluded that the evidence sufficed to permit a rational trier of fact to find all elements of the charged offenses beyond a reasonable doubt does not, as the government argues, preclude the granting of new trials under Rule

---

[1] The *Moran II* panel decided only that the decision in *Moran I* was not "unreasonable or obviously wrong" so as to warrant relief under the law of the case doctrine. *United States v. Moran*, 393 F.3d 1, 7-8 (1st Cir. 2004).

33. In fact, the government's argument is inconsistent with the First Circuit's discussion of the Morans' ineffective assistance claims in *Moran II*, in which the Court specifically stated that the question whether each of the Morans would probably have been granted a new trial had relief been sought under Rule 33 was "*not* open and shut." *United States v. Moran*, 393 F.3d 1, 11 (1st Cir. 2004)(emphasis added). The Court further stated that this Court, having reviewed *Moran I*, "may well be" of a different opinion regarding whether new trials should be granted than it was at the time it granted the Morans' Rule 29 motions, *id.* at 11 n.6 – it did not say that it *should* be or *must* be. In short, neither *Moran I* nor *Moran II* categorically preclude the granting of new trials to either John Moran or Nora Moran, and Judge Boudin's concurring opinion in *Moran I* affirmatively indicates his view that new trial relief might be warranted at least for Nora Moran.[2]

The government regards it as a foregone conclusion that, had counsel moved for new trials, and had conditional orders granting new trials in the event of appellate reversal of the judgments of acquittal been entered, the First Circuit would have reversed those as well. As is clear from the preceding paragraph, the First Circuit did not view the matter as quite so cut and dried as does the government. Had the First Circuit believed that the granting of new trials under Rule 33 would have

---

[2] The government also criticizes the Morans' reliance on portions of this Court's Memorandum and Order of July 13, 2000. Gvt. Response at 13. Contrary to the suggestion of the government, *United States v. Sigma Intern., Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002), concerned vacated prior panel decisions of the Eleventh Circuit in the same case; the discussion which the government quotes has nothing to do with prior district court opinions in the case. Similarly, in *O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975), the Supreme Court was referring to its decision in that case which vacated the underlying Court of Appeals decision. The First Circuit did not vacate this Court's opinion; it simply reversed the judgments of acquittal. The continuing validity of much of the Court's discussion in its Memorandum and Order is not affected by the decisions in either *Moran I* or *Moran II*.

The government's argument that the Morans mischaracterized Judge Boudin's concurring opinion as the "definitive word from the First Circuit on various matters," Gvt. Response at 13-14, is too nonsensical to require further comment.

been improper, there would have been no need for it to leave it to this Court to explore the question of why counsel did not move for new trials. It could simply have decided that whether or not counsel's performance was deficient did not matter because there was no prejudice. While the Court's preference is generally to avoid consideration of ineffective assistance claims on direct appeal, it has considered such claims where the record was sufficient to permit it to do so. *See* Moran Memo at 27-28. The Court had before it all the record it needed to determine the prejudice prong of the *Strickland* inquiry, yet it did not do so. If the Morans could not under any circumstances prevail on their ineffective assistance claims, it seems unlikely that the First Circuit would not have said so rather than sketch a blueprint for further proceedings in the district court.[3]

The cases on which the government relies in no way preclude a determination by this Court that, had counsel moved for the alternative relief of new trials under Rule 33, they would have properly been granted. In *United States v. Santos*, 131 F.3d 16, 21 (1st Cir. 1997), *see* Gvt. Response at 29, the Court, in a single brief paragraph, held only that the district court had not abused its discretion in denying the defendant's new trial motion because there was substantial

---

[3] The First Circuit's decision to leave it to this Court to determine whether the Morans were denied their Sixth Amendment rights to the effective assistance of counsel, a determination which, as the Court noted, necessarily includes the subsidiary issue of whether "but for the error, the moving defendant probably would have received a new trial," *Moran II*, 393 F.3d at 11, indicates that *United States v. Rivera Rangel*, 396 F.3d 476, 486 (1st Cir. 2005), on which the government relies, Gvt. Response at 28-29, does not stand for the proposition, as the government suggests, that a new trial may never be granted on weight of the evidence grounds when the evidence has been found sufficient under the Rule 29 standard. Were this the case, the First Circuit would hardly have said that the new trial issue was "not open and shut," *Moran II*, 393 F.3d at 11, nor, in all probability, would it have left the issue open for the consideration of this Court. Moreover, nothing in *Rivera Rangel* indicates that it intended to overrule decades of First Circuit precedent holding that district courts *are* empowered to grant new trials under Rule 33 where the weight of the evidence preponderates heavily against the verdict.

evidence of his sanity at the time of his commission of the offense of which he was convicted.[4] In *United States v. Ruiz*, 105 F.3d 1492 (1st Cir. 1997), Gvt. Response at 29, the Court expressly noted that "[a] district court's power to order a new trial is greater than its power to grant a motion for acquittal" and that "[i]n considering a new trial motion, the court may consider both the weight of the evidence and the credibility of witnesses," *id.* at 1501, both of which are firmly established precepts which the government devotes much of its Response to attempting to convince the Court do not exist.[5] As in *Santos*, the First Circuit did no more in *Ruiz* than to hold that the district court had not abused its discretion in denying the defendant's new trial motion.[6]

---

[4] To the extent that the government seeks to suggest that the First Circuit's review of a district court's decision on a Rule 33 new trial motion based upon the weight of the evidence is *de novo*, *see* Gvt. Response at 28, it is in error.

[5] For example, at page 31 of its Response, the government argues, consistently with its erroneous view that the Court must assess the evidence in the light most favorable to the government in ruling on a Rule 33 new trial motion based upon the weight of the evidence, that the Court must accept the testimony of the government's witnesses unless their testimony was incredible as a matter of law. This is not, however, the standard applicable to Rule 33 new trial motions, in which context the First Circuit has said numerous times that the district court "has broad power to . . . assess the credibility of . . . the witnesses who testified at trial." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). *See* Moran Memo at 21. The cases on which the government relies, *United States v. Chastain*, 198 F.3d 1338, 1350 (11th Cir. 1999), *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981), *United States v. Stitzer*, 785 F.2d 1506, 1515 (11th Cir. 1986), and *United States v. Rivera*, 775 F.2d 1559, 1561-62 (11th Cir. 1985), *see* Gvt. Response at 31, were all Rule 29 cases, and their discussions of witness credibility have, therefore, no bearing upon the issues before this Court.

[6] The government, in its continuing effort to substitute Eleventh Circuit standards for those which prevail in this circuit, also relies on several Eleventh Circuit cases. *See* Gvt. Response at 30. The First Circuit does not, unlike the Eleventh Circuit, *see United States v. Cox*, 995 F.2d 1041, 1044 (11th Cir. 1993); Gvt. Response at 30, review grants of new trial motions based on the weight of the evidence more stringently than it reviews denials of new trial motions based on the weight of the evidence. The standard is the same: whether the district court abused its discretion in concluding – or in rejecting the conclusion – that the jury "reached a seriously erroneous result." *Rothrock*, 806 F.2d at 322. Also unlike the Eleventh Circuit, the First Circuit does not review the granting of new trial motions based on the weight of the evidence under the same standard applicable in civil cases. "In a criminal case, we are slightly more reluctant than in a civil case to

*Butcher v. United States*, 368 F.3d 1290 (11th Cir. 2004), is not "strikingly similar" to this case. *See* Gvt. Response at 33. In *Butcher*, the defendants relied on the district court's explanation of the reasons why it would have granted the defendants' new trial motions had they been timely filed in arguing that the prejudice prong of *Strickland* had been satisfied and that they should, therefore, be granted relief under §2255. The Eleventh Circuit concluded that the reasons on which the district court relied were flawed because they ignored the law of the case established in the Court's prior opinion in the case. *See id.* at 1298-1300. Here, as the Morans explained at length in their opening memo, this Court can find that the weight of the evidence preponderated so heavily against the verdicts as to warrant the granting of new trials without in any way contravening the law of the case as established by *Moran I* and *Moran II*.

Unlike the Eleventh Circuit, moreover, the First Circuit has never identified the appropriate focus of the *Strickland* prejudice inquiry as the result which it would have reached on appeal, *i.e.*, whether it would have upheld or reversed the district court's grant of new trials based on the weight of the evidence. Indeed, *Moran II* itself indicates that what the First Circuit would have done had new trials been granted is *not* the inquiry before this Court. On a §2255 motion, the Court said, the Morans

> must independently demonstrate that, given the holding in *Moran I*, an objectively reasonable district court would likely have granted a new trial. . . .The nisi prius court is the proper forum in which the defendants may attempt to make this showing.

393 F.3d at 11. Although the Court cited *Butcher* for the proposition expressed in the first sentence, it in no way indicated that this Court, in determining whether the *Strickland* prejudice prong had been satisfied, must view that inquiry from the vantage of what the First Circuit would have done

---

reject a trial judge's strongly voiced assessment that a jury's verdict was unjust as being contrary to the weight of the evidence." *Rothrock*, 806 F.2d at 322.

on appeal had the new trial motions been timely filed and granted. If the Court is convinced, after considering *Moran I*, as well as the trial record and all the arguments advanced by the Morans, that the verdict is so against the weight of the evidence that an objectively reasonable district court would have granted the Morans' new trial motions, then it is free to conclude that the *Strickland* prejudice prong has been satisfied.[7] Contrary to the government's argument, *Moran I* does not preclude such a determination.

### III. COUNSEL'S FAILURE TO MOVE FOR NEW TRIALS WAS NOT THE RESULT OF TACTICAL OR STRATEGIC CONSIDERATIONS BUT WAS INSTEAD CONSTITUTIONALLY DEFECTIVE ASSISTANCE OF COUNSEL UNDER *STRICKLAND*.[8]

There is no question that both Mr. Fishman and Mr. DiMento are (or, in the case of Mr. Fishman, were) in general highly competent and respected criminal defense practitioners, and the Morans have not contended otherwise. In this case, however, counsel made a grave error, as even the best lawyers will sometimes do. Both Mr. DiMento and Mr. Fishman have filed affidavits attesting that the failure to request alternative relief under Rule 33 was not a tactical or strategic

---

[7] The *Butcher* Court ignored the fact that the Supreme Court made it clear in *Williams v. Taylor*, 529 U.S. 362, 393 (2000), that the *Fretwell* "fundamentally unfair or unreliable" standard does not apply in ineffective assistance cases in which counsel's dereliction "deprive[d] the defendant of a substantive or procedural right to which the law entitles him." In such cases, which would include this one, as well as the vast majority of ineffectiveness claims, the ordinary *Strickland* standard applies. *See* Moran Memo at 18-19 n.8. The government has also ignored the clear inapplicability of the *Fretwell* standard to this case. *See* Gvt. Response at 33-34.

[8] The government argues that relief may be granted under §2255 only for "errors of constitutional dimension and grave injuries which if left unaddressed, would result in a complete miscarriage of justice," citing *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996), and *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1996). Neither case stands for this proposition, but, in any event, the issue here is, of course, one of constitutional dimension. There is no "complete miscarriage of justice" requirement for the granting of §2255 relief in such cases.

decision.[9] Yet the government effectively argues, based upon counsel's generally high level of skill, that their denials that the failure to seek Rule 33 relief was a tactical or strategic judgment should be regarded as untruthful, as, according to the government, the failure to move for the alternative relief of new trials must have been the result of a tactical decision. *See* Gvt. Response at 22, 25.[10] If the stellar reputations of Mr. DiMento and Mr. Fishman, which the government devotes four pages of its Response to establishing, suggest anything, it is that the two men, one of whom is now a Superior Court judge, should be credited when they make assertions of fact under oath.[11] Why

---

[9] The government's argument that Mr. Fishman's statement that "[t]o the best of [his] memory" there were no tactical or strategic reasons for failing to seek alternative relief under Rule 33 is a "far cry" from a statement that the failure to do so was not the result of tactical considerations, Gvt. Response at 26, is so weak as to underscore the bankruptcy of its position.

[10] The government suggests, citing exclusively cases from the Eleventh Circuit, that counsel's admissions of deficient performance should be given no weight. Gvt. Response at 18-19. As the Court noted in *Atkins v. Singletary*, 965 F.2d 952, 959-60 (11th Cir.1992), on which the government relies, a statement by an attorney that his failure to pursue a particular course was neither a strategic nor a tactical decision, which is what both Mr. DiMento and Mr. Fishman state in their affidavits, is not an admission of ineffective performance. These are statements of fact – that they did not decide for strategic or tactical reasons not to move under Rule 33 for the alternative relief of new trials – which are entitled to consideration by this Court. That it is ultimately this Court which must decide whether Mr. Fishman and Mr. DiMento rendered constitutionally ineffective assistance of counsel does not deprive the affidavits of Mr. DiMento and Mr. Fishman of relevance to that determination. In *Tarver v. Hopper*, 169 F.3d 710, 716 (11th Cir.1999), which simply attributed the language on which the government relies to *Atkins* in a parenthetical, the defendant's attorney expressed his belief that he had not prepared adequately for sentencing. He had, however, unlike this case, made "a deliberate decision" as to his chosen strategy.

[11] The government's emphasis on the reputations and skills of Mr. DiMento and Mr. Fishman is inconsistent with its insistence that the applicable standard is a wholly objective one under which the thought processes through which counsel determined the course to be followed are irrelevant. In support of this argument, the government places its primary reliance on an Eleventh Circuit case, *United States v. Chandler*, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). *See* Gvt. Response at 18-20. *Chandler*, however, stakes out a considerably more extreme position than the First Circuit has ever embraced, one too extreme for at least four members of the Court. *See* 218 F.3d at 1343 (Anderson, C.J., dissenting); *id.* (Birch, J., dissenting); *id.* at 1344 (Barkett, J., dissenting); *id.* at 1361 (Wilson, J., dissenting); *see also id.* at 1328 (Tjoflat, J., concurring in part and dissenting in part). Were the government's position correct, then counsel's testimony at an evidentiary hearing would be entirely

counsel did not move for new trials in a timely fashion is a matter which must be explored at an evidentiary hearing, not through *ipse dixit* pronouncements that the truth is contrary to the assertions of counsel in their affidavits. *See Moran II*, 393 F.3d at 11 (declining to consider ineffectiveness claim on appeal because "[f]actfinding will be required" in the district court to determine whether the failure to move for new trials was a calculated stratagem or an oversight).

  Moreover, once these skilled and experienced defense counsel realized that the post-verdict motion which was filed did not also seek relief under Rule 33, they attempted by every means at their disposal to bring a claim for Rule 33 relief before the Court, including, on the part of John Moran, making an argument to the First Circuit that he should be deemed to have sought Rule 33 relief in a timely fashion. *See Moran II*, 393 F.3d at 8-10. These efforts entirely undermine the government's argument that the failure to request Rule 33 relief within 7 days of judgment must have been a tactical decision. They also eloquently attest to how experienced and skilled counsel regarded the failure to so move in timely fashion – as a mistake to be remedied.

  The government's list of potential strategic reasons for the omission of an alternative request for new trials is unpersuasive. An attorney providing reasonably competent professional assistance to the Morans in conjunction with their post-verdict representation would not have neglected to request relief under Rule 33, either as an alternative to Rule 29 relief, in the event that the Court determined that the evidence was sufficient to support the verdicts under the standard applicable to

---

superfluous, as why *he* did or did not do something would have no bearing on the matter. Yet this has never been thought to be the case, as courts, including the *Chandler* Court, routinely scrutinize counsel's testimony as to his deliberative processes (or lack thereof) in determining whether his conduct fell within the range of professionally competent assistance of counsel. *See Moran II*, 393 F.3d at 10 (Court notes that "the record is barren of evidence as to why the lawyers did what they did" and that it could not "tell from this record whether the decision not to seek a new trial, when made, was a calculated stratagem or a mere oversight" (emphasis omitted)).

11

Rule 29 motions, or conditionally, in the event that the Court agreed that the evidence was insufficient to support the verdicts. *See* Moran Memo at 23-24 & n.11. Counsel were not, as the government suggests, on a roll after the Court granted Nora Moran's motion for judgment of acquittal on Count 4, *see* Gvt. Response at 25 – the Court at the same time *denied* the Morans' motions for judgments of acquittal on *every other count*. The Court was certainly familiar with the Rule 29 arguments and the applicable legal standards, *see id.*, but this familiarity supplies no reasoned basis for the omission of a Rule 33 argument. The legal standards applicable to Rule 33 motions on the ground that the verdict was against the weight of the evidence are not complex and are readily ascertainable, and, having made their arguments regarding the Rule 29 insufficiency of the evidence based upon the evidentiary record, the addition of a Rule 33 argument based on that same record would not have required much at all in the way of additional effort, because of the substantial overlap between the two arguments. Nor would it, as the government seems to suggest, have risked overly taxing the Court by requiring it to evaluate the evidence under two different standards.

  The Court had, to be sure, reserved decision on the Rule 29 motions at the close of all the evidence, Gvt. Response at 25, but it would not have been objectively reasonable for counsel to believe that there existed more than the *possibility* that judgments of acquittal might be granted. The fact that a particular result is *possible* does not make it probable or even likely, and courts reserve rulings on Rule 29 motions far more often than they ultimately grant them. The entry of a post-verdict judgment of acquittal is a relative rarity; the entry of post-verdict judgments of acquittal on all counts for two different defendants is rarer still. To refrain from requesting alternative new trial relief merely because there was a possibility that judgments of acquittal might be granted would be objectively unreasonable. Such considerations did not, moreover, as is clear from counsel's

affidavits, play a role in counsel's failure to seek new trials for the Morans. While the Morans and their counsel would undoubtedly have preferred outright acquittals to new trials, *see* Gvt. Response at 25, so would any defendant who had just been convicted of a crime, yet requests for new trials as an alternative remedy are routinely included in post-verdict motions, and for very good reason. If a judgment of acquittal is denied, and a new trial has not been sought, then, barring appellate reversal, the conviction will stand. A new trial, however, even if not the optimum result, gives the defendant another chance at avoiding conviction, an opportunity which is especially valuable where, as here, the government's evidence on crucial points is quite thin.[12] Moreover, a conditional grant of a new trial provides back-up relief for the defendant should a judgment of acquittal be granted but then reversed on appeal.

The government's argument that moving for new trials would "dilute" the goal of "full dismissal" because "it would force the court to focus upon two rules applicable to the case," Gvt. Response at 26, misconceives the nature of Rule 29 and Rule 33 relief. These are not two independent alternatives that the Court is free to choose between. If the Court concludes that no rational jury could have found the elements of the offenses charged beyond a reasonable doubt, then the Due Process Clause requires that the defendant be acquitted, and the Double Jeopardy Clause would prohibit retrial. A court acting lawfully would grant a Rule 33 motion rather than a Rule 29 judgment of acquittal only if it were convinced that the evidence sufficed to defeat a Rule 29

---

[12] The government might be able to present a stronger case on retrial, *see* Gvt. Response at 25, but such considerations have never stopped competent counsel from seeking new trials for their clients. Moreover, *both* sides can learn from experience, and it is just as likely, if not more so, that the defense at a second trial would become stronger as well, especially given the largely irremediable holes in the government's case, such as Noke's complete absence of memory of relevant events. *See* Moran Memo at 23 n.11. Counsel who presented John Moran's testimony at the first trial would be unlikely to flinch from a second trial simply because portions of that testimony might be admitted into evidence as party admissions.

challenge to its sufficiency. To accept the government's argument would be to accept the premise that it is objectively reasonable for counsel to predicate their strategic decisions on the likelihood that the court will ignore its constitutional obligations and deny a Rule 29 motion which it would have granted had the alternative of new trial relief not been available to it. Finally, were new trials granted, they would have been held before this Court; reassignment to a different judge, *see* Gvt. Response at 26, was only a remote and speculative possibility which would not reasonably have influenced the decision whether to seek new trials.[13] Failure to move for new trials for the reasons advanced by the government would not have been within the range of professionally competent assistance of counsel.

## CONCLUSION

For all the foregoing reasons, and for all the reasons set forth in the Morans' opening memorandum, John Moran and Nora Moran have demonstrated that both the performance and the prejudice prongs of the *Strickland* standard have been satisfied. They are, therefore, entitled to relief under §2255.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | By their attorneys, |
| */s/ Kimberly Homan* | */s/ Martin G. Weinberg* |
| Kimberly Homan | Martin G. Weinberg |
| Mass. Bar. No. 239000 | Mass. Bar No. 519480 |
| 20 Park Plaza, Suite 905 | 20 Park Plaza, Suite 905 |
| Boston MA 02116 | Boston MA 02116 |
| (617) 227-8616 | (617) 227-3700 |

Date: December 8, 2005

---

[13] The government finds it "significant" that counsel's affidavits did not discuss these theoretical strategic considerations. Gvt. Response at 26. And so it is: counsel's affidavit did not discuss these considerations because they played no role in their failure to seek new trials for their clients. They are *not* "tactical reasons why Fishman, on July 15, 1999, did not seek a new trial." Gvt. Response at 27.